IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BLUEDANE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:20-cv-00553 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| BANDURA CYBER, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's Motion to Change Venue and Memorandum in Support (Doc. No. 15, "Motion"). Plaintiff has responded (Doc. No. 21). Defendant has replied. (Doc. No. 24). Plaintiff has filed a Sur-Reply. (Doc. No. 29). The Motion is ripe for review.

For the reasons discussed herein, the Court will grant in part and deny in part Defendant's Motion.

## **FACTUAL BACKGROUND**[1]

The present lawsuit arises out of Defendant's alleged breach of a contract, the "Reseller Agreement" ("Reseller Agreement"), entered into between Plaintiff and Defendant. (Doc. No. 1). The Reseller Agreement provided that Defendant would sell, and Plaintiff would buy, software and hardware that had unique capabilities for Plaintiff's cyber risk management service. (*Id*. at 3).

---

[1] The Court provides the facts from the Complaint (which do not appear to be in dispute for purposes of resolving this Motion) to provide background information. Additionally, the Court appropriately considers evidence outside the pleadings in resolving a motion to transfer. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877, n.3 (M.D. Tenn. 2019) (citing *U.S. v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010)). However, the Court draws all reasonable inferences in favor of the plaintiffs. *Id*.; *Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. Stromberg Metal Works, Inc.*, No. 3:19-CV-00976, 2021 WL 780728, at *2 (M.D. Tenn. Mar. 1, 2021) (Richardson, J.).

1

After Defendant received full payment from Plaintiff, Defendant informed Plaintiff that the software did not have the agreed upon functionality. (*Id*. at 1). Despite many reassurances from Defendant, Plaintiff never received this software. (*Id*. at 2). The Reseller Agreement contains a forum-selection clause: "[a]ny claims or suits filed in connection with the subject matter of [the] Agreement will be filed exclusively in the state or federal courts resident in the State of Maryland." (Doc. No. 1-2 at 6).

In support of its Motion, Defendant filed a declaration of Brian McMahon, the current Chief Executive Officer of Defendant. (Doc. No. 25). The declaration establishes that at the time the parties entered into the Reseller Agreement, Defendant's headquarters were located in Maryland. (*Id.* at 1). It also states that several of Defendant's executives currently reside in Maryland and that Defendant remains registered to do business in Maryland. (*Id*. at 2). Attached to the declaration is a Certificate from the State of Maryland Department of Assessments and Taxation confirming Defendant's ability to do business in Maryland. (Doc. No. 25-1).

The Complaint, tending towards overkill in the number of legal theories premised upon a relatively concise set of facts, sets forth counts for I) fraud in the inducement of a contract, II) fraud and intentional misrepresentation, III) negligent misrepresentation in business transactions, IV) constructive fraud, V) gross negligence, VI) breach of contract, VII) breach of the Tennessee Consumer Protection Act, VIII) breach of implied covenant of good faith and fair dealing, IX) promissory estoppel/detrimental reliance, X) unjust enrichment, XI) breach of implied warranty of merchantability, and XII)[2] breach of implied warranty of fitness for a particular purpose. (Doc. No. 1 at 21-37).

---

[2] The Complaint refers to this as "Count IV," but this appears to be a typographical error. Inasmuch as this count follows Count XI, the Court will refer to this count as "Count XII."

## STANDARDS FOR MOTIONS TO TRANSFER VENUE

The standard for transfer of venue to a more convenient forum is found in Section 1404, which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019). "The burden rests with the moving party to establish that venue should be transferred." *Winnett v. Caterpillar, Inc.*, 3:06–cv–00235, 2006 WL 1722434, *2 (M.D. Tenn. June 20, 2006). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely be disturbed. *TailGate Beer, LLC*, 2019 WL 2366948, at *7. A defendant must make a clear and convincing showing that the balance of convenience strongly favors the alternate forum. *Id.*

In reviewing a motion to transfer, a court balances case-specific factors, including the private interests of the parties[3] and public-interest concerns,[4] such as systemic integrity and fairness. *Id.*; *see also Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020). A district court "has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), cited in *Sardeye v. Wal-Mart Stores East, LP*, Case No. 3:18-cv-01261, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019).

"Although a plaintiff's choice of forum is generally given deference, that choice may be defeated . . ." *Harris v. Parker*, No. 3:20-cv-01110, 2021 WL 229651, at *3 (M.D. Tenn. Jan. 22,

---

[3] Private interests include location of willing and unwilling witnesses, residence of the parties, location of sources of proof, location of the events that gave rise to the dispute, systemic integrity and fairness, and plaintiff's choice of forum. *Tailgate Beer*, 2019 WL 2366948, at *7.

[4] Public interests include enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, and familiarity of the trial judge with the applicable state law. *Tailgate Beer*, 2019 WL 2366948, at *7.

2021). One way in which the choice of forum can be defeated is by an enforceable forum-selection clause in a contract between the parties. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013) ("*Atlantic Marine*"). That is to say, a forum-selection clause "may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59. "Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.*

When a court determines that there is a valid selection clause, the court should shift the traditional § 1404(a) analysis as directed by the Court in *Atlantic Marine,* as will be discussed in more detail below.

**DISCUSSION**

Defendant argues that based on the forum-selection clause in the Reseller Agreement, the Court should transfer this case to the District of Maryland, Northern Division. (Doc. No. 16 at 1). Plaintiff argues that 1) the forum-selection clause is invalid (and that validity is a threshold issue that must be considered before enforceability), and 2) even if the forum-selection clause is valid and enforceable, the applicable factors (noted above in two footnotes) weigh against transfer. (Doc. No. 21). The Court will first address whether or not it must determine the *validity* of the forum-selection clause before determining the *enforceability* of the forum-selection clause. After answering that question (in the negative, as discussed below), the Court will address whether the forum-selection clause is enforceable, and after answering that question (in the affirmative), the Court will determine whether the relevant factors weigh in favor of transfer.

As a preliminary note, the Court notes that "[a] forum selection clause is presumptively valid and enforceable." *Ricketts v. hybris AG*, No. 1:15 CV 277, 2015 WL 13679481, at *3 (N.D. Ohio June 19, 2015) (citing *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 930 (6th Cir.

2014)). The party opposing the application of the clause bears the burden of overcoming that presumption, *i.e.*, showing that the clause is either invalid, unenforceable, or both. *Id.*

A. Validity versus enforceability

Plaintiff argues that the Court must first discuss (and determine) whether the forum-selection clause is valid. (Doc. No. 21). Defendant argues that the Court does not need to first address validity. (Doc. No. 24).

Plaintiff cites the Court to one primary case for its proposition that the Court must first discuss validity as a threshold issue. In that case, a district court in this circuit began the relevant discussion as follows:

> Before addressing whether transfer is appropriate, the Court must start by determining whether the forum selection provisions are valid. Defendant argues the Court's decision requires a straightforward application of Supreme Court caselaw and points to that Court's decision in *Atl. Marine Const. v. U.S. Dist. Court for the W. Dist. of Texas*, 571 U.S. 49, 134 S. Ct. 568 (2013). (Doc. 14 at 1). While it is true *Atlantic Marine* requires courts to apply a 28 U.S.C. § 1404(a) analysis to a valid forum selection clause, the Supreme Court presupposed the forum selection clause in that case was valid, and the Court did not otherwise address that issue. *See Atl. Marine*, 134 S. Ct. at 581 n.5. This is because the parties in *Atlantic Marine* did not contest the validity of the controlling forum selection provision. *Id.* at 576 (" . . . there was no dispute that the forum-selection clause was valid."). Here, however, Plaintiff does contest the validity of the forum selection clause in the [agreement]. (Doc. 20 at 4–6). As such, this Court, unlike in *Atlantic Marine*, must determine the forum selection clause's validity.

*Walker v. AMVAC Chem. Corp.*, No. 4:17-CV-17, 2018 WL 5023417, at *3 (E.D. Tenn. Mar. 21, 2018). The court went on to discuss the fact that "[t]he Sixth Circuit has not recognized a distinction between forum selection enforceability and validity,"[5] and decided that "after considering the development of federal law in this area, the Court finds a forum selection clause's contractual validity to be an issue separate from, and preliminary to, the enforceability issue." *Id.*

---

[5] In fact, the Court notes that the Sixth Circuit and the district courts in the Sixth Circuit often seem to use the terms "enforceable" and "valid" interchangeably in this context. *E.g.*, *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009).

5

at *4. After announcing a general principle that validity (as distinguished from enforceability) is a threshold issue to be decided by the court in which the plaintiff originally filed ("originating court"), the court identified an exception to that general principle—ultimately inapplicable in that particular case—indicated in a line of Sixth Circuit cases:

> Although not on point here, there is a line of cases in which federal courts refuse to consider certain types of validity issues, opting to leave them open for the transferee entity to resolve. *See Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1138 (6th Cir. 1991) (holding general allegations of fraud cannot invalidate an enforceable forum selection clause) (citing *Scherk*, 417 U.S. at 519 n.14*); see also Wong*, 589 F.3d at 828 (same). These cases hold that allegations regarding contractual fraud do not render a forum selection clause unenforceable. Rather to invalidate a forum selection clause on grounds of fraud, the allegation has to be particular to the clause itself. To clarify what issues are off limits in regards to forum selection validity, the Court finds *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006) to be instructive. *Buckeye* was an arbitration agreement case, but in resolving a contract fraud issue the Court distinguished between validity challenges that were specific to an arbitration clause and collateral attacks on the entire contract. *Id.* at 444. The latter was held not to be grounds for invalidating an arbitration agreement, but the former was. *Id.* The Court made a further distinction between invalidity attacks on the entire contract and contract formation issues, with formality issues being an exception to the rule prohibiting a preliminary, collateral attack on a contract containing an arbitration or forum selection clause. *Id.* at 444 n.1 ("The issue of [this] contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."). A reason for the rule and its exception may be based on efficiently allocating dispute resolution resources; allegations of fraud or duress insert a complicated factual dispute that is difficult and costly to resolve prior to transfer or dismissal, while formality issues—in comparison—are more readily resolvable at a case's preliminary stages. Still another reason may be equitable. Fraud results in a void or voidable contract that, nonetheless, is founded upon an agreement, albeit one made under false pretenses. The fraud surrounding such an agreement may not be material to a particular provision, such a forum selection clause; in other words, the parties may have entered into a forum selection bargain even if the concealed truth were known, which is why the challenger has to show fraud particular to the clause in order to defeat it. Formation issues, on the other hand, involve an alleged transaction not founded upon any sort of binding agreement. However, whatever the reason for the exception, contract formality issues, such as the one here, ought to be litigated in the originating court. *Id.*

*Id.* at *6. This exception turned out to be inapplicable in *Walker*, which did not involve issues of fraud. But in the case before this Court, Plaintiff brings claims of fraud in the inducement of the

6

entire contract; Plaintiff challenges not the Reseller Agreement's forum-selection clause in particular, but rather the validity of the Reseller Agreement as a whole, and does so on the basis of alleged fraudulent inducement to enter into the Reseller Agreement. Therefore, the Court finds that the case before it falls into the exception delineated in *Walker*. The upshot is that even under the analysis prescribed by the sole case upon which Plaintiff relies, the Court need not consider validity before enforceability.[6] Plaintiff thus has failed to persuade the Court that there is any legal authority requiring it (the originating court) to (initially and separately) determine the validity of the Reseller Agreement's forum-selection clause. Instead, it is appropriate to leave such issue(s) of validity for later (and in particular, for the transferee court if in fact the case is transferred to another court). The Court will proceed accordingly here, declining to address validity in deciding the Motion.

B. Enforceability of the forum-selection clause

The enforceability of a forum-selection clause is governed by federal law. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Under federal law, a forum-selection clause should be enforced "absent a strong showing that it should be set aside." *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591 (1991). "When evaluating the enforceability of a forum selection clause, this court looks to the following factors: (1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong,* 589 F.3d 821 at 828

---

[6] Because the Court finds that the facts of this case fit into the exception laid out in *Walker*, the Court need not decide whether *Walker* was correct that the originating court generally should analyze validity before enforceability. The Court also need not determine which state's law will eventually apply to the validity issue in the instant case.

7

(citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir.1999)). As noted, *Wong* (and other courts) refer to these three things—ostensibly three questions—as "factors." On closer inspection, they are not really factors; instead, they are questions, and an affirmative answer to any of them dictates the conclusion that the forum-selection clause is unenforceable. In other words, the clause is unenforceable if (but only if) (1) the clause was obtained by fraud, duress, or other unconscionable means; or (2) the designated forum would ineffectively or unfairly handle the suit; or (3) the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. These, then, are three situations that serve as alternative *prerequisites* to a finding of unenforceability.[7]

---

[7] As noted, *Wong* refers to these three questions as three "factors" in the analysis of whether a forum-selection clause is unenforceable. 589 F.3d at 828. However, the Sixth Circuit was clear in *Security Watch, Inc. v. Sentinel Systems, Inc.*, which was cited by *Wong*, that the Restatement discussed "three *situations* in which a court may determine that a forum selection clause is unenforceable." 176 F.3d 369, 375 (6th Cir. 1999) (emphasis added). And *Wong* itself makes clear: unenforceability can be found if (but only if) one of these situations exists (as indicated by an affirmative answer to the questions identified in *Wong*). *Wong* spoke in terms of the plaintiffs having to show the existence of a situation in order for the situation to support (and dictate) a finding that the forum-selection clause is unenforceable. 589 F.3d at 828 ("Under the first factor, the party opposing the clause must show fraud in the inclusion of the clause itself.") *id.* at 829 ("Under the second factor, plaintiffs must show that a Gibraltar court would ineffectively or unfairly handle the suit."); *id.* ("To meet the third prong of our test, the plaintiff must show that enforcement of the clause would be so inconvenient such that its enforcement would be unjust or unreasonable."). And because the plaintiffs in *Wong* had failed to show the existence of any of the three situations—*i.e.*, an affirmative answer to any of the three listed questions asking whether a particular situation existed—the court rejected the plaintiffs' challenge to enforceability. In short, *Wong* requires that at least one of these situations exist; if it does, the forum-selection clause is unenforceable, and if it does not, then the forum-selection clause is enforceable.

All of this indicates that the Sixth Circuit here is not really talking about "factors," even though it happened to use the term in *Wong*. True "factors" are things to be balanced against one another in deciding whether to answer the question at issue in the affirmative; by contrast, the question of whether a forum-selection clause is unenforceable is answered in the affirmative if any one of three independent "situations" exists; each of these three alternatives is essentially an alternative prerequisite to finding a forum-selection clause unenforceable, inasmuch the clause can be found unenforceable if (but only if) one of the prerequisites is satisfied. The distinction between factors and prerequisites is one with a difference. *See Memphis A. Phillip Randolph Inst. v. Hargett*, 478 F. Supp. 3d 699, 703 (M.D. Tenn. 2020) (Richardson, J.) (noting, and suggesting the

As noted above, the burden is on the party opposing the clause (here, Plaintiff) to show that it should not be enforced. *Id*. This means (as explained in the footnote above) that it is incumbent upon the plaintiff to show that one of the three situations is applicable. *Id.* at 828-29.

In order to show the existence of the first situation, the party opposing the forum-selection clause (*i.e.*, the nonmovant) must show that there was fraud in the inducement of the forum-selection clause itself, not just general fraud in the inducement of the underlying contract as a whole, as "[g]eneral claims of fraud [ ] do not suffice to invalidate the forum selection clause." *Id.* (quoting *Preferred Cap., Inc. v. Assocs. in Urology*, 453 F.3d 718, 722 (6th Cir. 2006)). In *Wong*, the plaintiffs brought a breach of contract claim when the defendant fraudulently represented that collusion and multi-player accounts did not occur on the defendant's poker gambling site. 589 F.3d 821 at 825. The court determined that this was only a claim of fraud in the inducement of the contract as a whole as it did not pertain to the forum-selection clause itself and that the clause was therefore not unenforceable by virtue of the existence of the first situation (which in fact did not exist). *Id*. at 828. The court noted that if the plaintiffs had alleged that the defendant falsely represented the selected forum or that plaintiff entered into the forum-selection clause unknowingly, the claim of fraud would have been specific to the clause itself. *Id*. In this case, Plaintiff claims that Defendant fraudulently induced Plaintiff to enter into a contract. Plaintiff did not allege any fraud pertaining to the clause itself in the Complaint (such as misrepresenting the

---

importance of the fact, that the four factors of the preliminary injunction test generally are "'factors to be balanced, not prerequisites that must be met'") (quoting *Michael v. Futhey*, No. 08-3922, 2009 WL 4981688, at *17 (6th Cir. Dec. 22, 2009))).

Terminology aside, the upshot is that if (but only if) the Court finds that any one of the three situations exists, the Court should find the forum-selection clause to be unenforceable.

forum-selection clause or causing Plaintiff to agree to the forum-selection clause unknowingly).[8] Therefore, this claim of fraud is a claim of general fraud only—*i.e.*, fraud in the inducement of the contract as a whole—and it is not a claim of fraud specifically regarding the inclusion of the forum-selection clause. For this reason, Plaintiff's fraud claim does not make the forum-selection clause unenforceable by virtue of the first situation (which in fact does not exist here).

In order to show the existence of the second situation, the nonmovant must show that the designated forum would ineffectively or unfairly handle the suit. *Wong*, 589 F.3d 821 at 828. The existence of different or less favorable law in the designated forum is not sufficient to meet this standard. *Id*. at 829. The party must instead show that it would be denied any remedy or would be treated unfairly. *Id*. Plaintiff has not made a showing of this kind or even addressed at all whether the District Court of Maryland would ineffectively or unfairly handle this ligation, and the Court has no reason to believe that the District Court of Maryland would deprive Plaintiff of a remedy or otherwise treat it unfairly. Therefore, this is not a situation in which the clause is unenforceable by virtue of the second situation (which in fact does not exist here).

In order to show the existence of the third situation, the nonmovant must show that "the [contractually] designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d 821 at 828. The nonmovant must show that litigating in the designated forum would be not merely inconvenient but rather so inconvenient that it would "effectively deprive the party of their day in court." *Assocs. of Urology*, 453 F.3d at 722 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). Plaintiff

---

[8] The Complaint does state that "[t]he Reseller Agreement constituted a valid and binding contractual agreement, with the exception of the forum selection clause . . ." but then proceeds to repeatedly allege exclusively fraud in the inducement of the entire contract. (Doc. No. 1 at ¶ 165, 168, 190, Count I).

in this case has not made a showing to meet this high burden. Plaintiff does not argue that the District Court of Maryland would be so inconvenient as to make litigation there unjust, and the Court is aware of no reason why it would be. Therefore, the clause will not be unenforceable for serious inconvenience (which in fact does not exist here).

In sum, the Court finds that Plaintiff has not sufficiently shown that the clause is unenforceable by virtue of the existence of any of the three situations laid out in *Wong*—none of which exist here—and so the Court finds that the forum-selection clause is enforceable.

C. Venue analysis

The Court has discussed above, in the Standards for Motions to Transfer Venue section, the typical § 1404(a) analysis conducted when determining whether changing venue is appropriate. However, when there is an enforceable forum-selection clause (which the Court has determined there is),[9] the calculus changes. The Court has previously explained:

> Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). However, this discretion is limited significantly when a valid forum-selection clause governs the parties' dispute. In *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Supreme Court explained that "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid

---

[9] The Court also notes that there are two types of forum-selection clauses, permissive and mandatory. The forum-selection clause in this case is mandatory, as it "clearly indicates that jurisdiction is proper only in the selected forum." *Ricketts*, 2015 WL 13679481, at *3 (quoting *FDIC v. Nova Fin. and Inv. Corp.*, No. 1:12–CV–2553, 2015 WL 2195062, at *5 (N.D. Ohio May 11, 2015)).

11

forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (internal citations omitted).

*Atlantic Marine* directs that district courts may not consider the plaintiff's choice of forum or private interests when a valid forum-selection clause is present. *Id.* at 581–82. "As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* (internal citations omitted).[10]

*Showhomes Franchise Corp. v. LEB Sols., LLC*, No. 3:17-CV-00508, 2017 WL 3674853, at *2 (M.D. Tenn. Aug. 24, 2017);[11] *see also Hildebrand v. Optimal Mortg. Servs., LLC*, No. 3-16-0618, 2016 WL 3258418, at *2 (M.D. Tenn. June 14, 2016). "Factors relating to the public interest include the local interest in having localized disputes decided at home; the administrative difficulties resulting from court congestion; and the interest in having a trial of a diversity case in a forum at home with the law that will be applied." *Des-Case Corp. v. Madison Indus. Holdings LLC*, No. 3:17-CV-01239, 2018 WL 1858161, at *2 (M.D. Tenn. Apr. 17, 2018).[12]

---

[10] The Court finds this to be the correct analysis considering the Supreme Court's analysis in *Atlantic Marine*. However, in an unpublished case cited by Plaintiff that was issued shortly after *Atlantic Marine*, *Schmiede Corp. v. Exact Software N. Am., LLC*, No. 4:13-CV-47, 2014 WL 12847502, at *3 (E.D. Tenn. Feb. 18, 2014), a court continued to give the plaintiff's choice of forum deference when conducting its analysis (despite the presence of an enforceable forum selection clause). The Court finds this to be the incorrect approach in light of *Atlantic Marine*.

[11] By including the first sentence of this quote, the Court does not mean to suggest that it has specifically determined that "a valid forum-section clause is present." To the contrary, as noted above the issue of whether a valid *forum selection clause in particular* is present has not been raised, and the issue of whether the Reseller Agreement *as a whole* is valid has not been raised. But the Court sees no reason why the principle in this sentence would not apply where, as here, the *validity* of the forum selection clause in particular has gone unchallenged and the enforceability of the forum selection clause has been upheld by the court.

[12] The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> "The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity."

Plaintiff addresses the public interest factors by arguing primarily that 1) it is inefficient to transfer the case, 2) Maryland has no interest in this lawsuit, and 3) Tenn. Code Ann. § 47-18-113(b) indicates that transfer would be inappropriate. (Doc. Nos. 21, 29).[13]

Plaintiff asserts that "from a cost and efficiency standpoint, the case is proceeding and transfer would delay the resolution." (Doc. No. 21 at 8). Defendant argues that both court systems (this Court and that in the District of Maryland) are likely congested. (Doc. No. 24 at 4). The Court agrees that there is no indication of how a transfer will delay the resolution of this case, or why proceeding in this Court as opposed to the District of Maryland will be faster or more efficient for the parties or for either court. Therefore, the Court does not find that this factor weighs against transfer.

Next, Plaintiff asserts that Maryland has no interest in this lawsuit. Plaintiff notes that Defendant is not located in Maryland, and that instead it is a Delaware corporation and its offices

---

*Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, Eliminating the Limitations of Limitations Law, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")).

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020). As discussed, because the Court will consider only the public interest factors in deciding whether to transfer this case, the Court disregards Plaintiff's arguments in briefing regarding the private interest factors, such as the convenience of the witnesses and Plaintiff's choice of forum.

[13] Plaintiff also seems to make some general arguments that it is unfair that Defendant has (allegedly) breached the contract but wants to enforce the forum-selection clause, as well as several general points about fairness. The Court is unpersuaded by Plaintiff's general references to fairness.

are in Virginia. (Doc. No. 21 at 13). Defendant responds that Maryland has an interest in overseeing this lawsuit, because Defendant has substantial connections with Maryland. (Doc. No. 24 at 4). Defendant submitted a Declaration indicating that Defendant's headquarters were in Columbia, Maryland, when the Reseller Agreement was executed. (*Id.*). Defendant has since moved its headquarters to Virginia, but Defendant is still registered to do business in Maryland. (*Id.*). Defendant also asserts that the Reseller Agreement contains a choice-of-law provision selecting Maryland law as the relevant law to this dispute. (*Id.*). Therefore, the Court finds that the relevant factors (the interest of a state in overseeing local litigation and the law to be applied), overall, weigh in favor of transfer.

Finally, Plaintiff argues that Tenn. Code Ann. § 47-18-113(b) indicates that transfer would be against the public policy of Tennessee. The relevant statute states that:

> Any provision in any agreement or stipulation, verbal or written, restricting jurisdiction or venue to a forum outside this state or requiring the application of the laws of another state with respect to any claim arising under or relating to the Tennessee Consumer Protection Act of 1977 and related acts set forth in this title is void as a matter of public policy. Further, no action of a consumer or other person can alter, amend, obstruct or abolish the right of the attorney general and reporter to proceed to protect the state of Tennessee and consumers or other persons within this state or from other states who are victims of illegal practices of persons located, wholly or in part, in Tennessee's borders.

In briefing, Plaintiff admits that the Court in *Schmiede* considered this argument and found that "although the language of the statute restricts jurisdiction to this forum, federal courts in Tennessee have interpreted this clause as permitting transfer of venue." *Schmiede Corp. v. Exact Software N. Am., LLC*, No. 4:13-CV-47, 2014 WL 12847502, at *4 (E.D. Tenn. Feb. 18, 2014)[14] (citing

---

[14] Plaintiff seems to imply that since ultimately the *Schmiede* court denied transfer of the case, the Court should likewise deny transfer here. The Court has already discussed why it is unpersuaded that the court in *Schmiede* applied the correct analysis after *Atlantic Marine*, and the Court is unpersuaded by the *Schmiede* court's ultimate holding.

*Wholesale Tape & Supply Co. v. iCode, Inc.*, 2005 WL 3535148 (E.D. Tenn. Dec. 22, 2005) and *Long v. Dart Int'l, Inc.*, 173 F. Supp. 2d 774, 779 (W.D. Tenn. 2001)); *see also Morton v. E. Kenneth Wall & Assocs., Inc.*, No. 12-2882-STA-DKV, 2013 WL 12149641, at *3 (W.D. Tenn. Jan. 30, 2013) ("Due to the inherently procedural nature of Tennessee's statute [Tenn. Code Ann. § 47-18-113(b)], the Court holds that federal law will control the applicability of the forum-selection clause to the case at bar. Applying federal common law, the Court determines the forum-selection clause is enforceable."). Therefore, it is apparent that federal courts do not consider Tenn. Code Ann. § 47-18-113(b) when determining whether a transfer is appropriate, and Plaintiff has not pointed the Court to any case law that has done so. Therefore, the Court finds that this argument does not help Plaintiff show that transfer is inappropriate in this case.

Overall, the Court finds that the factors weigh in favor of transferring venue. Therefore, the Court finds that the public-interest factors do not overcome the presumption in favor of the forum-selection clause, and the case will be transferred to the District of Maryland.

## CONCLUSION

As noted in *Atlantic Marine*, a motion to transfer venue under Section 1404(a) should, under certain circumstances, be granted based on (and in accordance with) a forum-selection clause between the movant and nonmovant. Those circumstances are present here, for the reasons discussed herein. And so the Motion will be granted insofar as it requests transfer to the United States District Court for the District of Maryland. The Motion will be denied insofar as it requests transfer to a specific division of that district.[15]

---

[15] Defendant proposes that the Court transfer venue to specifically the *Northern Division* in particular. (Doc. No. 16 at 9). However, in the forum-selection clause the parties did not specifically consent to this particular division, and instead consented only to litigation in the federal (or, alternatively, state) courts in Maryland. § 1404(a); (Doc. No. 1-2 at 6). Therefore, the Court will leave the specific divisional assignment of this case to the District of Maryland.

15

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE